**Benjamin Prince, Appellee, v. Railway Express Agency, Inc., Appellant.**

**Gen. No. 44,981.**

■■■■■

Heard in the first division of this court for the first district at the December term, 1949. ▮▮▮▮▮ Opinion filed June 5, 1950. Rehearing denied June 26, 1950. Released for publication June 26, 1950.

FULMER LONG and ELMER F. SLOVACEK, both of Chicago, for appellant.

JAFFE & GREEN, of Chicago, for appellee; JACOB H. JAFFE, of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

The defendant express company appeals from a judgment, entered on a trial before the court without a jury, for $2,238.58, damages to a carload of dairy cows shipped by express from Milwaukee (West Allis), Wisconsin to New Bedford, Massachusetts.

There is no substantial dispute in the evidence. The cars were loaded at point of origin November 1, 1944 at 10:30 a. m., moved to Chicago and attached to New York Central train No. 10 until the train reached Cleveland, Ohio, where according to the practice of the railroad company at that time express cars were removed from the train and attached to the second train No. 10, which left Cleveland 36 minutes after the first train. The car arrived in Boston too late for connection with the night train for New Bedford, Massachusetts. Mr. White of the office of the general manager of defendant at Boston notified plaintiff by telephone

that the cows would have to be unloaded. Plaintiff arrived at the Brighton stockyards as the cows were being taken from the express car to the barn. He told the representative of the stockyards to see that the cows were milked and watered. This request was not complied with. The cows were moved to destination the next morning. Ten cows suffered damage to their udders because of failure to milk them enroute. They were no longer useful as dairy cows. They were sold on the market at a loss to the plaintiff of the amount fixed by the judgment. An agent of the defendant, called by plaintiff under section 60 of the Practice Act [Ill. Rev. Stat. 1949, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060], testified that the car was in the possession of the carriers from the time it was loaded until it was delivered at New Bedford, Massachusetts, 44 hours and 10 minutes; that the usual and customary time required to transport the car would be about 45 hours, based on the 10:30 a. m. loading time.

 Plaintiff contends that it was the duty of the express company to unload and milk the cows if their transportation was not concluded within 36 hours. Defendant's position is that it was under no obligation to do anything other than take the cows from the car and water and feed them, unless the shipper gave directions in writing for milking or other care of the cows. Defendant's contention is based upon the following provision of its tariff. ''Instructions of shippers as to the feeding and care of animals in transit, when given in writing or plainly marked upon the container, must be complied with, and no charge will be made for feeding animals when the food accompanies the shipment.'' It contends that in the absence of written instructions it is not permitted under the law to render special service to a shipper by milking the cows enroute. No authorities directly in point are cited. It is our opinion that this provision is not a limitation on

238

the right or duty of the carrier to care for animals entrusted to it. In *Jennings v. Baltimore & O. R. Co.,* 194 Ill. App. 358, plaintiffs brought suit to recover damages to a shipment of apples caused by freezing. The evidence on behalf of defendant merely showed that there was no delay in the shipment or any mishap during the transit. In affirming a judgment against the carrier the court said: "The law is well settled that a common carrier must anticipate and guard against all natural consequences that may occur during transportation." In 13 C. J. S. § 63 (a) it is said: "The fact that the carrier cannot make a charge for a service, unless such charge is provided for in the published tariffs and classifications, see *infra.* Sec. 302, does not affect the existence of the duty to render such service as is necessary to the proper care of livestock in transit." In *Southern Exp. Co. v. McClellan,* 66 Colo. 591, a house-broke dog died enroute from a broken bladder, sustained by failure of the carrier to exercise the dog daily. The court said:

"No statute nor regulation has been pointed out which relieves the defendant, as a common carrier, of the usual responsibility of caring for animals, delivered to it for transportation, while the same are in transit. The fact that the carrier could not make a charge for a service, unless such charge is provided for in the published tariffs and classifications, does not affect the existence of the duty to render such service as is necessary to the proper care of live stock in transit."

See also *Southern Pac. R. Co. of Mexico v. Gonzalez,* 48 Ariz. 260; Am. Jur., Carriers, sec. 727, p. 864. Here plaintiff orally requested that the cows be milked. Payment for such service was neither requested nor refused. It appears without controversy that failure to milk dairy cows within 36 hours will cause the injuries suffered in this case. The waybill required

the unloading of the cows within 36 hours. They arrived at Boston within 30 hours. It was the duty of the defendant to milk the cows when they were unloaded at the Brighton stockyards, especially in view of the request of plaintiff.

The judgment is affirmed.

*Affirmed.*

Tuohy, P. J., and Feinberg, J., concur.